TUCKER, Judge.
This suit was brought by Dave London and his wife Mrs. Dorothy J. London, both individually, and by Mrs. Dorothy J. London as the natural tutrix of her minor daughter, Linda G. Joseph, against the Signal Insurance Company of Los Angeles, California, as an uninsured motorist insurer, and against James A. Stewart, for damages sustained by plaintiffs for personal injuries, property damage, and medical expenses arising out of an intersectional collision between Mrs. London and the defendant Stewart on July 17, 1970, in East Baton Rouge Parish. A reconventional demand and third party claim was filed by defendant Tames Stewart, denying his own negligence and seeking to recover damages for property damage sustained by his vehicle in the collision. After the case was tried on the merits and judgment rendered, plaintiffs submitted a second supplemental petition attempting to amend article 19 of their original petition, and ask that, in the alternative that should Mrs. London be found guilty of negligence, that she and her husband, as co-tutors of the minor Linda G. Joseph, be allowed to recover damages for injuries sustained by the minor in *577 the collision. This motion to amend the original petition was denied by the trial judge.
The trial judge found Mrs. London guilty of negligence in making a left turn immediately in the face of the oncoming vehicle being driven by defendant, James Stewart, and that her negligence was the proximate cause of the collision between the parties. The trial judge dismissed plaintiffs’ suit at their costs, including that of the expert witnesses Drs. Robert J. Hall and Louis Sherman. He gave judgment in favor of plaintiff in reconvention, James A. Stewart, and against defendants in re-convention, Mr. and Mrs. Dave London, and Signal Insurance Company, in solido, in the amount of Two Hundred Fifty-four and 30/100 ($254.30) Dollars, with legal interest from date of judicial demand until paid, and for all costs of incidental demands.
From this judgment plaintiffs Mr. and Mrs. London have appealed on the following issues:
“1. Whether the defendant driver, James A. Stewart was negligent and whether his negligence was the proximate cause of the accident.
2. Whether the plaintiffs’ driver, Mrs. Dorothy London, was guilty of contributory negligence, or whether she had preempted the intersection and whether Stewart therefore had the last clear chance to avoid the accident, but negligently failed to do so.
3. Whether the court committed manifest error in denying plaintiffs’ motion to amend the article 19 of the original petition.
4. Measure of damages suffered by plaintiff.”
The collision out of which this suit arose occurred at the intersection of Scenic Highway (U.S. Highway #61) and Swan Street in Baton Rouge. At this point Scenic Highway consists of four lanes, two running north and two running south, separated by a narrow median strip. The accident happened at approximately 5:30 P. M., on a rainy day, as Mrs. Dorothy London was attempting to turn left from Scenic Highway into Swan Street. The intersection of these two streets is controlled by an electric semaphore signal which hangs directly over the middle of the intersection. It does not have a green arrow, or protected left turn indicator. Immediately prior to the accident plaintiff, Mrs. London, with her minor daughter Linda Joseph as a passenger, had been proceeding north on Scenic Highway, in the inside northbound lane, while defendant Stewart was proceeding south on Scenic Highway in the outside southbound lane. Plaintiff slowed down, permitted one automobile to pass proceeding southward, and then turned left into the intersection of Scenic Highway and Swan Street. Before she had completely cleared the intersection her vehicle was struck on the right rear by defendant’s automobile, causing her to be knocked into the side of automobile of Mrs. Gloria Barnes who had been waiting in the eastbound lane of Swan Street for the signal light to change so that she might traverse Scenic Highway.
The testimony regarding defendant Stewart’s negligence is conflicting, but even more important is the matter of Mrs. London’s contributory negligence. The overwhelming weight of authority, both statutory and jurisprudential, is to the effect that the person attempting a left turn must first ascertain that he or she may do so with safety. He shall not attempt to do so unless the way is clear. See R.S. 32:104(A), 32:122, and 32:235. The person making a left turn who sustains an accident in the process must explain how the accident occurred and show that he was free from negligence. See Washington Fire & Marine Insurance Company v. Firemen’s Insurance Company, 232 La. 379, 94 So.2d 295 (1957). These principles are *578 expressed in two recent opinions of this court as follows:
“It is readily apparent that the burden resting upon a left turning motorist from a highway to determine whether the turn can be made with safety is considerable in degree, and if an accident occurs while the motorist is negotiating such a turn, the duty weighs heavily upon him to explain how the accident occurred, and that he was free from fault in negotiating the turn. A left turn can be made only when it will not endanger oncoming or overtaking traffic. See Estes v. Hartford Accident & Indemnity Company, 187 So.2d 149 (La.App.2d Cir. 1966); Pryor v. Allstate Insurance Company, 201 So.2d 355 (La.App.2d Cir. 1967); Huisman v. Southern General Insurance Company, 203 So.2d 404 (La. App.4th Cir. 1967) and Parish v. Minvielle, 217 So.2d 684 (La.App.3d Cir. 1969).”
Quoted from Tallo v. Johnson, 255 So.2d 446 (La.App.1st Cir. 1971).
“The cases in our jurisprudence are legion to the effect that a high degree of care is placed upon a left turning motorist. See, for example, Magee v. Yates, La.App., 219 So.2d 299, and Nugent v. Glover, La.App., 205 So.2d 129. A left turn is one of the most hazardous maneuvers a motorist can perform consequently it is incumbent upon a motorist to ascertain that such a move can be accomplished in reasonable safety. LA-R. S. 32:104(A). Additionally, a left turning driver is required to signal his intention to turn and yield the right of way to oncoming and overtaking vehicles lawfully using a highway. Husser v. Bogalusa Coca Cola Bottling Company, La.App., 215 So.2d 921, and authorities therein cited.
Whether or not a left turning motorist discharges the burden of care incumbent upon him is a matter to be determined in the light of the circumstances of each individual case.”
Quoted from Audubon Indemnity Co. v. Liberty Mutual Ins. Co., 256 So.2d 655 (La.App.1st Cir. 1971).
In this particular case Mrs. London testified at the time of the trial that she entered the intersection on a green light, stopped and waited for a car to pass, then attempted the turn. She further testified after listening to the testimony of Mrs. Barnes that she must have waited under the light unitl it changed to yellow or red. When talking to the investigating officer, however, Mrs. London had testified that she may have entered the intersection on a caution light, that she stopped while under the light and could not tell what color it was. Mrs. Barnes testified that the light facing her on Swan Street was green at the time of the collision which would have made it red on Scenic Highway at that time. Stewart testified that the light was green as he approached the intersection and also as he went through it. The trial judge could not find sufficient evidence on which to hold that the light was red for Mr. Stewart at the time of the collision, or that it was red when Mrs. London passed under it. Nor is there sufficient evidence to support Mrs. London’s contention that the traffic light at time of impact was unfavorable for Stewart.
Regardless of the color of the light at the time of the collision we agree with the trial court in finding Mrs. London guilty of negligence in attempting a left turn when it was unsafe to do so. Mrs. London testified at the time of the trial that Stewart was at least 200 to 250 feet away at the time she attempted the left turn. Previously Mrs. London had told the insurance company that defendant Stewart was 78 feet away at the time of the attempted left turn. Mr. Stewart, on the other hand, testified that Mrs. London was 10 or 12 feet away when she suddenly turned in front of him; that, although he applied his brakes as hard as he could and attempted to pull his car to the side, he could not avoid hitting her. He also testified that he was traveling at the rate of *579 about 35 m. p. h., and there is no direct evidence to contradict this. If he were 250 feet away at the time that Mrs. London began her left turn, in order for him to have reached the intersection and to have collided with the right rear portion of the London vehicle, the velocity of his vehicle necessarily would have exceeded the rate of speed reflected by any evidence, provided Mrs. London, in her left turn, averaged five miles or more per hour in traversing the two eleven foot wide south bound lanes and the additional six feet past the west curb of Scenic Highway at the time of impact. In arriving at his conclusion that Mrs. London was negligent in making her left turn the trial judge had this to say:
“. There is no evidence of speed in the record except Mrs. London’s testimony that he must have been going faster than the posted speed limit because of the sound of the collision and because he got to the intersection sooner than she thought he should have gotten there. Those two reasons may be good reasons to her but the Court can’t base Mr. Stewart’s speed on how loud a collision sounds to a witness or how quickly he got to the intersection. If he got there quickly it might further allude to her negligence in making a left turn because this is a consideration which must be taken into account when deciding whether or not a left turn can be made safely. Counsel for plaintiff argued that the defendant, Stewart, did not see what he should have seen. Mrs. London was on the opposite side of a four-lane highway; a driver is not held accountable to anticipate actions of motorists on the other side of the median. Mr. Stewart had a right to assume that Mrs. London would make the left turn safely and that she would wait as long as necessary to make the turn in safety.”
We are unable to discern any error, manifest or otherwise, on the part of the trial judge in his finding that the negligence of Mrs. London in making her left turn when it was unsafe to do so was the sole and proximate cause of the accident and resulting damages. We also concur in his ruling that the defendant Stewart was free from any negligence.
We do not find that the trial judge abused his discretion in refusing to permit plaintiffs to amend their petition after the case had been tried and judgment rendered.
For the foregoing reasons the judgment of the trial court will be affirmed at appellants’ costs.
Judgment affirmed.