I ¡.PATRICK M. SCHOTT, Judge Pro Tem.
Does a four inch deep, eight to ten inch wide, dip in the turf of the outfield of a city-owned baseball park constitute an unreasonable risk of harm for an outfielder who trips in the dip while chasing a fly ball? The trial court held that it was. We reverse.
Plaintiff was the only witness to testify. The accident was in New Orleans in July. The grass was six inches high compared to three inches high when plaintiff went back to the park a few days after his accident. He described the dip as four inches deep and eight to ten inches wide and he said one had to get right on top of .it to see it.
A tort action against a government entity as the owner or custodian of a defective “thing” can be based upon two distinct theories of liability, negligence under Civil Code art. 2315 or strict liability under Civil Code art. 2317. Jones v. City of Baton Rouge—East Baton Rouge Parish, 388 So.2d 737 (La.1980). Under either theory, the claimant must prove that under the circumstances the thing presented an unreasonable risk of harm, which resulted in the damage, or stated another way, that the thing was defective. Kent v. Gulf *219 States Utilities Co., 418 So.2d 493, 497 (La.1982). Every imperfection is not a legal defect. The unreasonable risk of harm criterion requires a balancing of claims and interests, a weighing of the risk and gravity of the harm, and a consideration of individual and society’s rights and obligations. Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1988). In order to qualify as a defect, the imperfection must constitute a dangerous condition or pose an unreasonable risk of injury to a prudent person who exercises ordinary care under the circumstances. Orleans Parish School Board v. City of New Orleans, 585 So.2d 643 (La.App. 4th Cir.1991), writ denied, 589 So.2d 1069 (La.1991).
One can hardly expect a public baseball outfield to be as smooth and even as the green of a golf course. Like any grass covered field it is bound to contain dips and inclines no matter what maintenance is performed. The dip in question here was so slight that one had to get right on top of it to see it. That explains why a grass cutter on a tractor wouldn’t notice it. What we have here is a natural depression that can easily develop in any open field. It cannot logically sink to the level of a defect — an unreasonable risk of harm to an outfielder.
The cases cited by plaintiff are so easily distinguished that they weaken his case. The condition in Payton v. City of New Orleans, 96-0109 (La.App. 4 Cir. 6/26/96), 679 So.2d 446, 451 was described as “a crater-like formation created by the loss of the concrete surface of the sidewalk, and in which a veritable lawn is growing.” The court observed that citizens in this day and age should not have to negotiate such a sidewalk at their peril. In Johnson v. New Orleans Department of Streets, 94-1542 (La.App. 4 Cir. 2/23/95), 650 So.2d 1216, the defect was a hole in the sidewalk covered over with grass so as to constitute a trap for pedestrians using the sidewalk. In that case this trap was so dangerous that the issue of whether or not it was an unreasonable risk of harm was not even mentioned by the court. The condition in Levie v. Orleans Parish School Board, 537 So.2d 351 (La.App. 4th Cir.1989), writs denied, 538 So.2d 616 and 617 (La.1989), was a hole combined with a tree root on a school playground which the court found to pose an unreasonable risk of harm to the twelve year old plaintiff who got her foot trapped in the hole. It suffices to say that the dip in the outfield in the instant case stands in sharp contrast to the traps and holes in the sidewalks and school yard in the cited cases.
The one case that most closely resembles the instant case is Landry v. State, 495 So.2d 1284 (La.1986). That case also involved a recreational area where the plaintiff was injured while engaged in appropriate recreational conduct. However, the defect was a large hole, eight inches deep, flush to the seawall. Plaintiff had come up the seawall carrying a hamper of crabs and crab nets and was about to step off the seawall when he saw the hole and attempted to step back. The hole was the result of wave wash and erosion. Only after a prolonged discussion in which the court balanced the value of the recreational area to the public against the cost of preventing defects like this did the court come down in favor of the plaintiff. The major difference in the cases is the kind of defects. In that case the court was dealing with an eight inch hole alongside a place where pedestrians were | ¡¡expected to walk. In the instant case we have a natural dip in an open field that is only four inches deep.
We have concluded that plaintiff failed to prove that the dip in the outfield was an unreasonable risk of harm. Accordingly, the judgment appealed from is reversed and there is judgment in favor of the City of New Orleans and against plaintiff dismissing his suit at his cost.

REVERSED AND RENDERED.